696 N.E.2d 1259 (1998)
297 Ill. App.3d 97
231 Ill.Dec. 688
In re R.B., et al., Minors (The People of the State of Illinois, Petitioner-Appellee
v.
Sandra B., Respondent-Appellant).
No. 2-97-0813.
Appellate Court of Illinois, Second District.
June 22, 1998.
*1260 Josette Skelnik (Court-appointed), Law Offices of Josette Skelnik, Elgin, for Sandra B., Mother.
David R. Akemann, Kane County State's Attorney, St. Charles, Martin P. Moltz, Deputy Director, David A. Bernhard, State's Attorney Appellate Prosecutor, Elgin, for the People.
Carole J. Grahn-Hayes, Guardian Ad Litem, Geneva, for B. Minors.
Justice McLAREN delivered the opinion of the court:
Respondent, Sandra B. (Sandra), appeals from the trial court's termination of her parental rights to her children, R.B., S.B., and M.B. We reverse.
The State filed two petitions for adjudication regarding the B. children in 1994, alleging that Sandra and her husband Ronald neglected the children by (1) failing to provide necessary and proper care and support for the children by failing to keep an adequate supply of food in the house and failing to keep current on two of the children's immunizations; and (2) creating an environment injurious to the children's welfare, in that both Sandra and Ronald were substance abusers. The children were taken into custody by the Department of Children and Family Services (DCFS) and placed into foster homes. The petitions were proved, and the children were adjudicated neglected and made wards of the court in August 1994. As a result, Sandra and Ronald were ordered to (1) submit to a substance abuse evaluation and follow all recommendations for treatment; (2) submit to psychological testing as arranged by DCFS and follow all recommendations for counseling; (3) submit to random urine drops as arranged by DCFS; and (4) establish a stable source of income and assure that the children's physical needs were adequately met.
On May 28, 1996, the State filed a petition to terminate Sandra's and Ronald's parental rights. The petition alleged that Sandra and Ronald were unfit to be parents because they (1) failed to maintain a reasonable degree of interest as to the children's welfare; (2) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children or to make reasonable progress toward the return of the children within 12 months of the adjudication of neglect; and (3) evinced the intent to forego their parental rights. A hearing was held beginning on January 23, 1997. At the end of the State's case, the State moved to withdraw its allegation that Sandra evinced an intent to forego her parental rights and moved that a count be added alleging that Sandra failed to protect her children from an injurious environment. The court granted both motions but also granted Sandra's motions for directed finding as to the newly added count as well as to the count alleging that she had failed to maintain a reasonable degree of interest in the children's welfare. Sandra then presented her evidence.
On June 24, 1997, the court entered an order finding Ronald to be unfit. The court *1261 reserved ruling on Sandra. However, on July 7, 1997, the court found Sandra unfit as to paragraph 7.B. of the petition, which alleged that Sandra failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children or to make reasonable progress toward the return of the children within 12 months of the adjudication of neglect. Approximately one month later, the court found that it was in the best interests of the children to terminate the parental rights of Sandra and Ronald. Sandra's appeal followed.
Sandra now contends that the court's finding that she was unfit to be a parent was not supported by the evidence. The parental rights of a nonconsenting parent may only be terminated upon an adjudication of unfitness which must be supported by clear and convincing evidence. In re S.G., 216 Ill.App.3d 668, 669, 159 Ill.Dec. 125, 575 N.E.2d 932 (1991). A trial court's findings as to unfitness are to be given great deference and will only be overturned on appeal if they are against the manifest weight of the evidence. S.G., 216 Ill.App.3d at 669, 159 Ill. Dec. 125, 575 N.E.2d 932. Our review of the evidence in this case leads us to believe that the trial court's finding of unfitness is against the manifest weight of the evidence.
The court found Sandra unfit based on the allegations that she failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children or to make reasonable progress toward the return of the children within 12 months of the adjudication of neglect. See 750 ILCS 50/1(D)(m) (West 1996). The court noted that Sandra had completed some, but not all, of her client-service plan tasks and that she sometimes did not demonstrate much interest when therapist Colleen Connelly visited her at home. However, the court stated that it did not have to base its decision on those grounds because of the opinion in the case of In re K.S., 203 Ill. App.3d 586, 148 Ill.Dec. 682, 560 N.E.2d 1380 (1990). The court found that, while Sandra no longer abused drugs, Ronald still had a substance abuse problem. Therefore, the condition that led to the removal of the children, i.e., substance abuser in the children's home, had not been corrected "and there has been no progress made" by Sandra to correct it. At the best interests hearing, the court further clarified its basis for finding Sandra unfit:
"But the basis of the finding of unfitness was that Sandra [B.] refused to make a choice for her children and against her husband. She sat on the stand interestingly today once again defending his absence at visitation because they were short at work and he had to be at work and it just again isis yet another illustration of this woman's commitment to her husband at the expense of her children. So the the prospect of them going home to this one bedroom home with a substance abuser is not a very bright prospect."
The court's reliance on K.S. was misplaced, and its decision based upon K.S. was against the manifest weight of the evidence.
In K.S., a three-count petition was filed alleging that Leslie Smith neglected her three children. No allegations were made against the father, Walter Smith, who was in the Department of Corrections. Two counts of neglect, including the allegation that Leslie created an environment injurious to the children's welfare, were proved. At the disposition hearing, the court told the Smiths:
"[M]y concern here for Mr. and Mrs. Smith is that Mr. Smith won't allow his own rather unrealistic view of his marriage and Mrs. Smith's use and abuse of controlled substances, to cost him his children. If things aren't corrected and corrected very quickly, Mr. Smith's going to end up in my judgment, without a wife and without his children. * * *
I am * * * absolutely convinced that Mrs. Smith has serious on-going drug problems and drug dependency that is in serious need of attention. * * * And, the volume of evidence that I heard at the adjudicatory hearing, all indicated someone who is having a terrible struggle with drugs. * * * The first ray of hope I would see here would be a genuine admission by Mrs. Smith she's got a drug problem. Without that step, I see no hope for any progress from Mrs. Smith. And, I see *1262 no hope for return of the custody of the children to her.
That, of course, gives Mrs. Smith a real tough decision to make. It gives you a real tough decision to make, Mr. Smith. And, unless and until Mrs. Smith acknowledges she's got a drug problem, * * * she's not even going to come close to a return of the children to her custody. And, that leaves me with the only alternative of your custody, at such time as you're finally released from the work release program and in a position to exercise custody.

Now, I am just warning you, you may be looking at the very unpleasant and, frankly, horrible choice of living with your children or living with your wife. But, right now, you're not going to be able to do both. * * * Unless Mrs. Smith starts to address the problem, I'm not sending those children back to her." (Emphasis in original.) K.S., 203 Ill.App.3d at 591-92, 148 Ill.Dec. 682, 560 N.E.2d 1380.
Eventually the parental rights of both Leslie and Walter were terminated. The termination was upheld on appeal.
A critical difference between K.S. and the case before us is the warning given to Walter Smith and the lack of warning given to Sandra. Walter Smith was specifically admonished by the court that he was going to have to choose between living with his children or with his wife, but not both, if his wife did not overcome her drug abuse. Here, Sandra was not told that she had to make a choice. The trial court stated:
"I was a little concerned that I had not made the direct admonishments that Judge DeLaMar had made to the father in that [S.K.] casethe mother in this case that a choice needed to be made, but I don't know that I was the judge at the time of the dispositional hearing in the case. It's not a prerequisite that the Court put that choice to the parents. They are parents; they are adults. I guess they are presumed to be able to figure that out themselves.
But the Court did hear testimony in this case from Colleen Connelly that she discussed with the mother, at the time she was providing treatment to the mother, that the mother may have to make a choice of either getting her children back or divorcing, leaving her substance-abusing husband, Ronald [B].
So while it may not have beenwell, it wasn't the Court that gave that choice to the mother. Another person in this case did. And notwithstanding that fact, there was no evidence introduced to the Court that there was even consideration being given by Sandra [B] at this time to leave her husband."
We disagree that Sandra is presumed to know, without being explicitly told by the court, that she must leave her husband or have her parental rights terminated. We also disagree with the court in K.S. that a specific warning of such a choice was not required for the resolution of the case. See K.S., 203 Ill.App.3d at 599, 148 Ill.Dec. 682, 560 N.E.2d 1380. "Parental rights and responsibilities are of deep human importance and will not be lightly terminated." In re Paul, 101 Ill.2d 345, 351-52, 78 Ill.Dec. 149, 461 N.E.2d 983 (1984). We cannot condone the severance of these rights and responsibilities based upon an unrecognized and cavalierly made presumption. Here, Colleen Connelly, a therapist, testified that she told Sandra that, if Ronald continued his substance abuse, she could not "predict a time at which DCFS is likely to allow" the children to live with them again. However, Connelly never told Sandra that, unless she left Ronald, she would not regain custody of her children and her parental rights would be terminated. No other warning was given.
We conclude that Sandra should not have been found to be an unfit parent based upon her failure to perform an act that she was never told she was required to do. Otherwise, termination is based upon a failure to foresee the needs that professionals are supposed to know about and relate. Furthermore, the court should not allow such an order to be given to a parent by one of a myriad of therapists and social workers working with the parent. The requirement of such a momentous decision should come from the court, not a social worker.
*1263 Our review of the evidence in this case lends us to conclude that no other allegations of the petition are supported by clear and convincing evidence. Therefore, the termination of Sandra's parental rights was against the manifest weight of the evidence.
For this reason, the judgment of the circuit court of Kane County is reversed.
Reversed.
INGLIS and HUTCHINSON, JJ., concur.